IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ERNEST TREVINO, | ) | No. CV-F-05-1364 OWW/TAG HC |
| | ) | |
| | ) | ORDER DISMISSING PETITION |
| | ) | FOR WRIT OF HABEAS CORPUS |
| Petitioner, | ) | PURSUANT TO 28 U.S.C. § 2255 |
| | ) | AND DIRECTING CLERK OF COURT |
| vs. | ) | TO ENTER JUDGMENT FOR |
| | ) | RESPONDENT |
| | ) | |
| WARDEN PAUL SCHULTZ, | ) | |
| | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

On October 28, 2005, Petitioner Ernest Trevino, a federal prisoner, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.

On April 16, 2007, the United States Magistrate Judge recommended that the Section 2241 petition be dismissed. No objections to the recommendation have been filed.

The Court concurs with the recommendation for the reasons set forth below.

Petitioner was convicted by jury in No. CR-F-89-150 TJM, United States District Court for the Eastern District of

1

California, Sacramento Division, of conspiracy to manufacture and distribute methamphetamine and aiding abetting the manufacture of methamphetamine. Petitioner was sentenced on September 27, 1990 to 375 months incarceration.

Petitioner appealed his conviction to the Ninth Circuit on the ground, *inter alia,* of insufficiency of the evidence. The Ninth Circuit affirmed Petitioner's conviction, *United States v. Grohman*, 1991 WL 268693 (9th Cir.1991), holding in pertinent part:

> On October 3, 1988, agents from federal and state law enforcement agencies found and searched, pursuant to a search warrant, the largest methamphetamine laboratory ever discovered in Sacramento. At the laboratory located on Hedge Avenue, they found two pounds of methamphetamine, the chemical [sic] to manufacture more, and evidence linking Grohman and Trevino to the lab operation. Laboratory glassware at the site had Grohman's fingerprints on it.
>
> Trevino's involvement was further established by his purchases of methamphetamine precursor chemicals from a police informant. There was also evidence linking him to the delivery of the chemicals to the Hedge Avenue lab, as several of the containers were marked before sale to him and then identified at the lab.
>
> Officers searched Trevino's residence in Richmond and found, among other things, an address book which contained the police informer's beeper number and the phone number of Jerry Andrews, identified as the head of the Hedge Avenue laboratory.
>
> Additional investigators executed a search warrant at Grohman's residence in Sacramento, which Grohman rented from Andrews. During the search, agents found methamphetamine in several places. They also found an Ohaus triple beam scale with several glassine

baggies, a box with several pieces of lab glassware, and a narcotics ledger in Grohman's handwriting.  He admitted that he used and sold methamphetamine.  The detached barn at Grohman's residence smelled like methamphetamine or its precursors.  There were many similarities- things consistent with the production of methamphetamine- between the barn and the Hedge Avenue laboratory.

...

*IV.  Sufficiency of Evidence to Support Trevino's Conviction*

Trevino's argument that there was not sufficient evidence to support his conviction lacks merit.  The evidence establishes that Trevino made several trips to Los Angeles to pick up phenylacetic acid (PAA), a precursor chemical used in manufacturing methamphetamine.  Several barrels of PAA seized from the lab on October 3 were identified as having been picked up by Trevino on October 1, 1988 in Los Angeles. It was also established that the barrels of PAA found at the laboratory on October 3 were barrels which had been delivered to Trevino on August 9.

Trevino had PAA stored in cardboard barrels and methylamine in five-gallon plastic containers factory marked 'Kerosene' in a storage locker.  Such chemicals were stored in the same way in the lab seized on October 3.

Furthermore, witnesses observed the October 2 transfer of barrels of PAA by Trevino and others to individuals who took them to the home of another indicted conspirator, Fred Montoya, and then to the Hedge Avenue lab site.

That his name and phone number were found on index cards in Montoya's home further linked Trevino to the conspiracy.  Phone records showed long distance calls between Montoya's and Trevino's numbers and Trevino's number and Jerry Andrews' number between May 4, 1988

> and October 15, 1988.  Finally, business
> cards containing slang terms used in the
> methamphetamine trade were found at Trevino's
> residence; these cards implicate him in the
> business of illegal drug production.
>
> Given the evidence, the jury could reasonably
> conclude that Trevino was involved in the
> conspiracy.  The jury could infer from the
> evidence that Trevino was supplying the lab
> with precursor chemicals.  The evidence was
> sufficient to show his agreement to assist in
> the manufacture and distribution of
> methamphetamine.  It is also sufficient
> evidence of aiding and abetting the
> manufacture of methamphetamine.  The
> transport and delivery of the precursor
> chemicals satisfies the overt act
> requirement, and intent may be inferred from
> Trevino's actions.

Since the affirmance of his conviction, Petitioner has filed three motions to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 in the United States District Court for the Eastern District of California, Sacramento Division.[1]  The first was filed on August 24, 1992 and denied by Order filed on September 12, 1997.  A certificate of appealability was denied by the District Court and the Ninth Circuit (Nos. CV-F-92-1394; CR-F-89-150).  The second was filed on January 28, 2000 and transferred to the Ninth Circuit as a second or successive Section 2255 motion by Order filed on February 8, 2000.  The Ninth Circuit declined to certify the second or successive motion

---

[1] Judicial notice is taken of the dockets of the District Court and the Ninth Circuit.  A court is permitted to take judicial notice of court records in another case, including court records available to the public through the PACER system via the internet. *See United States v. Howard*, 381 F.3d 873, 876 n. 1 (9th Cir.2004); *Jacobsen v. Schwarzenegger*, 357 F.Supp.2d 1198, 1207 (C.D.Cal.2004).

4

(Nos. CV-F-00-195; CR-F-89-150). The third was filed on October 6, 2004 and transferred to the Ninth Circuit as a second or successive Section 2255 motion by Order filed on October 21, 2004. The Ninth Circuit declined to certify the second or successive motion. (Nos. CV-F-04-2104; CR-F-89-150).

In his Section 2241 petition, Petitioner claims that "post-conviction interpretation of statute has precluded Petitioner's convictions" and that Petitioner "falls under 'savings clause' of Section 2255."

Petitioner's contention that a post-conviction interpretation of a statute precludes his convictions of conspiracy to manufacture and distribute methamphetamine and aiding abetting the manufacture of methamphetamine is based on a misreading of *United States v. Valdez-Santos*, 370 F.Supp.2d 1051 (E.D.Cal.2005), *rev'd*, 457 F.3d 1044 (9th Cir.2006).

In *Valdez-Santos*, the District Court made two rulings. First, the District Court granted the defendant's motion for a directed verdict on the count charging defendant with conspiracy to manufacture and distribute methamphetamine. The grant of the motion for directed verdict did not involve any interpretation of a statute but, rather, involved the District Court's view of the sufficiency of the evidence to support the jury's verdict of conviction. 370 F.Supp.2d at 1053-1054. Second, the District Court granted the defendant's motion for a new trial and transfer to the Central District of California with regard to the charge of possession and distribution of a listed chemical,

pseudoephedrine, in both Sacramento and Los Angeles counties, with knowledge that it would be used to manufacture methamphetamine. The District Court ruled that venue of the possession count was proper only in the Central District of California. In so ruling, the District Court relied in part of its interpretation of the aiding and abetting statute, 18 U.S.C. § 2, and venue statute for multi-district crimes, 18 U.S.C. § 3237(a). 370 F.Supp.2d at 1055.[2]

Because no issue of multi-district venue is at issue, Petitioner's basic premise that he is entitled to proceed pursuant to Section 2241 because of the statutory interpretation set forth in *Valdez-Santos* is without merit. Petitioner is conflating *Valdez-Santo*'s analysis of the sufficiency of the evidence supporting the conspiracy conviction with the analysis of proper venue for the possession charge in an attempt to come with the "savings clause" of Section 2255 that allows a petitioner to proceed under Section 2241.

Petitioner is not entitled to proceed under Section 2241 pursuant to the "savings clause" of Section 2255. As explained in *Stephens v. Herrera*, 464 F.3d 895, 898 (9th Cir.2006), *cert. denied*, ___ U.S. ___, 127 S.Ct. 1896 (2007):

> [A] § 2241 petition is available under the 'escape hatch' of § 2255 when a petitioner (1) makes a claim of actual innocence, and (2) has not had an 'unobstructed procedural

---

[2] The United States appealed only the ruling granting the motion for new trial and transfer of venue in *Valdez-Santos*. As noted, the Ninth Circuit reversed that ruling.

6

shot' at presenting that claim.

Petitioner cannot make a claim of "actual innocence" because the Ninth Circuit ruled on direct appeal that the evidence presented to the jury was sufficient to sustain his convictions. Nothing in *Valdez-Santos* can change that conclusion. Moreover, Petitioner cannot demonstrate that he has not had an unobstructed procedural shot at presenting his claim because the claim was presented on direct appeal and rejected.

## CONCLUSION

For the reasons stated above,

1. The petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 is DISMISSED.

2. The Clerk of the Court is directed to enter JUDGMENT for Respondent.

IT IS SO ORDERED.

Dated:  June 8, 2007                         /s/ Oliver W. Wanger
                                          UNITED STATES DISTRICT JUDGE